UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAJI MILLER,

    Plaintiff,

v.                                                  Case No. 1:08-cv-1022
                                                 Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on June 26, 1970, completed two years of college and had special job training as a computer repair technician (AR 127, 788).[1] He alleged a disability onset date of July 1, 1995, which was revised to April 4, 2003, the date plaintiff was diagnosed as bi-polar (AR 47, 122, 129, 793). Plaintiff had previous employment as an administration clerk in the U.S. Army Reserves, a pizza delivery driver, a sorter at UPS, a restaurant worker (dishwasher and cook), fast food restaurant manager and cashier (AR 96, 122, 789-93). Plaintiff identified his disabling conditions as lower back injury, knee injury and bi-polar disorder (AR 121). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo*

---

[1] Citations to the administrative record will be referenced as (AR "page #").

and entered a decision denying these claims on May 8, 2008 (AR 13-23). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the sequential process. At step one, the ALJ found that plaintiff was insured for benefits through December 31, 2010, and that plaintiff has not engaged in substantial gainful activity since the alleged onset date of April 4, 2003 (AR 15). At step two, the ALJ found that during this insured period, plaintiff suffered from severe impairments of: obesity; chronic low back pain; depression/bipolar disorder; and drug abuse and alcoholism in apparent remission (AR 15-18). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1(AR 18-19). The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> to perform light work as defined in 20 CFR 404.1567(b) except he cannot climb ladders, ropes, or scaffolds and can only occasionally kneel, crouch or crawl. The claimant is limited to simple, unskilled work that does not involve maintaining intense concentration, although he can remain on task; work that requires only minimal interaction with co-workers and the general public; and routine, low stress work that does not involve frequent changes or adaptations, taking initiative or making independent decisions, meeting production quotas, or keeping pace with co-workers on the line.

(AR 19). The ALJ also found that plaintiff was unable to perform any of his past relevant work (AR 21-22).

At the fifth step, the ALJ determined that plaintiff had the RFC to perform a range of light work in the regional economy (identified as the lower peninsula of Michigan), including dining room attendant (9,500 jobs), dishwasher (4,020 jobs), light cleaner/housekeeper (13,500 jobs) and general kitchen help (14,000 jobs) (AR 22-23). Accordingly, the ALJ determined that plaintiff was not under a disability and entered a decision denying benefits (AR 23).

4

## III. ANALYSIS

Plaintiff raises two issues on appeal.

**A. Is there substantial evidence to support the commissioner's rejection of treating practitioner's conclusions that the claimant is incapable of performing substantial gainful activity?**

Plaintiff contends that the ALJ erred because (1) a nurse practitioner (NP), named Susan Kirk (sometimes referred to as "Kurk"), concluded that plaintiff was incapable of performing any job as of August 18, 2005 (AR 621), and (2) his counselor at the Veterans Administration, Ken Wilson, concluded in a March 8, 2008 "Mental Residual Functional Capacity Assessment" that plaintiff was "markedly limited" in a number of activities (AR 304-06). Plaintiff's Brief at 3-6.

### 1. NP Kirk

As it turns out, NP Kirk's opinion from August 2005 (AR 621) was wrongly included in, and fatal to, the administrative record. The court struck this opinion, which appeared on page 621 of the administrative record, after the Commissioner advised the court that the opinion "related to another person." *See* docket nos. 13, 15. However, the ALJ gave NP Kirk's opinion considerable attention: the ALJ referred to the opinion twice and it was the only medical record cited in the decision by page number (AR 17, 20). And it appears that the ALJ may have given this particular record some relevance to plaintiff's credibility:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, **the claimant's statements** concerning the intensity, persistence and limiting effects of these symptoms **are not credible** to the extent they are inconsistent with the residual functional capacity assessment **for the reasons explained below.**
>
> **First of all, the undersigned gives little weight to the opinion of nurse practitioner, Suzanne Kirk** who indicated in August 2005, that the claimant was

> unable to do any work for his lifetime (page 161F). This statement is not supported by the medical record, further he was actually working when this statement was completed. The claimant has made statements that he could have worked more hours at Pizza Hut, but they did not have additional hours available. Records also show that the most of the claimant's hospitalizations occurred after he had been out of medications for several months and a 2003 hospitalization occurred because he had been off medications for seven years. Interestingly, his doctor noted in September 2004, that his prognosis was good if he continued medications as described and that he had no physical or mental limitations. (emphasis added)

(AR 20). Plaintiff's counsel also specifically relied on Nurse Pracitioner Kirk's opinion as a basis for reversal of the ALJ's decision. Plaintiff's Brief at 3-4. Thus, both plaintiff's counsel and the ALJ factored into their considerations evidence that did not even pertain to plaintiff. For this reason alone, the integrity of the proceedings requires remand.

**2.      Counselor Ken Wilson**

Plaintiff also relies on counselor Ken Wilson's mental RFC assessment as proof of his disabling condition (AR 304-06). Mr. Wilson determined that plaintiff was markedly limited in numerous work related activities: the ability to understand, remember and carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination with or proximity to others without being distracted by them; the ability to make simple work-related decisions; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to ask simple questions or request assistance; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral

extremes; the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; the ability to travel in unfamiliar places or use public transportation; and the ability to set realistic goals or make plans independently of others (AR 304-05).

The ALJ addressed Mr. Wilson's opinion as follows:

> The undersigned also gives little weight to the mental residual functional capacity form completed in March 2008, by Kenneth Wilson, counsel at VA. Although he said that the claimant was markedly limited in many areas of functioning, a progress note from January 2008, just two months earlier, showed that the claimant's sleep was better, his mood was stable, he had no racing thoughts, and only occasionally felt depressed and irritable. The undersigned has considered these limitations in the RFC adopted.

(AR 21).

Plaintiff contends that Mr. Wilson is subject to the "treating physician" rule, i.e., his opinion is entitled to deference[2] and his opinion should not be rejected in the absence of a proper "legal basis for rejecting the opinion."[3] Plaintiff's Brief at 6-7. Contrary to plaintiff's contention, the "treating physician rule" is inapplicable to Mr. Wilson. A counselor is not a "treating source" whose opinion is entitled to deference. *See* 20 C.F.R. §§ 404.1502; 404.1513(a) (list of acceptable medical sources who can provide evidence to establish an impairment does not include a counselor); 404.1527(a)(2). *See, e.g., Doolin v. Astrue*, No. 3:08-cv-243, 2009 WL 1212232 at*8 (S. D. Ohio May 1, 2009) ("a counselor's opinion is not entitled to controlling weight"). In addition, the "good reason" requirement of 20 C.F.R. § 404.1527(d)(2) applies only to the opinions of "treating sources" (i.e., a physician, psychologist or other acceptable medical source who has provided medical

---

[2] *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (a treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability).

[3] *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004) (the ALJ must articulate good reasons for not crediting the opinion of a treating source).

7

treatment or evaluation) and not to the opinions of other "medical sources" such as a counselor (i.e., "other health care providers who are not acceptable medical sources"). *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir.2007). Thus, "the deferential reason-giving requirements for the rejection of a treating-source opinion necessarily do not apply where the source in question is not an 'acceptable medical source.'" *Burke ex rel. A.R.B. v. Astrue*, No. 6:07-cv-376, 2008 WL 1771923at *7 (E.D. Ky. April 17, 2008). Because Mr. Wilson is not an acceptable medical source, the ALJ was neither required to give his opinion "complete deference" nor subject to the "good reason" requirement of § 404.1527(d)(2). *See Smith*, 482 F.3d at 876; *Burke ex rel. A.R.B.*, 2008 WL 1771923at *7.

That being said, the ALJ's reasoning is unclear with respect to how the ALJ determined plaintiff's RFC, which limited plaintiff "to simple, unskilled work that does not involve maintaining intense concentration, although he can remain on task; work that requires only minimal interaction with co-workers and the general public; and routine, low stress work that does not involve frequent changes or adaptations, taking initiative or making independent decisions, meeting production quotas, or keeping pace with co-workers on the line." (AR 19). In reaching the RFC determination, the ALJ apparently rejected most of Mr. Wilson's limitations as inconsistent with a "January 2008" progress note. The ALJ does not identify the author of this progress note or discuss the note in any detail. In his brief, the Commissioner refers to a progress note by Zulfiqar Ahmed, M.D., dated January 14, 2008 (AR 182-86). However, this progress note does not set forth any particular limitations (AR 182-86), and may not be the note referred to by the ALJ.

The Commissioner also asserts that the ALJ's decision is supported by the decisions of two state agency psychologists, Dr. Kriauciunas and Dr. Brundage (AR 330, 346, 622-24).

Defendant's Brief at 20. However, the ALJ's decision does not cite these opinions as the basis for determining plaintiff's RFC; rather, the ALJ simply stated that he considered the assessments of state agency physicians regarding plaintiff's ability to perform basic work activities in accordance with SSR 96-5p and found the opinions "consistent with the ultimate finding that the claimant is not disabled" (AR 21). In summary, the ALJ does not explain how he determined plaintiff's mental limitations as set forth in the RFC determination.

After reviewing the ALJ's decision, I find that this matter should be reversed and remanded for re-evaluation of the medical evidence and issuance of a new decision for two reasons. First, the ALJ considered irrelevant medical evidence (i.e., NP Kirk's August 18, 2005 opinion) as a basis for rejecting the credibility of plaintiff's claim. As previously discussed, the ALJ gave NP Kirk's opinion considerable attention and cited it as reason for finding that plaintiff lacked credibility. Second, the ALJ has failed to adequately articulate his analysis of the evidence, and particularly how he determined plaintiff's FRC. The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). While the ALJ rejected some of Mr. Wilson's opinions in favor of limitations set forth in "a progress note from January 2008," it is unclear which limitations, if any, the ALJ found credible.

For these reasons, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should review plaintiff's claim without reference to NP Kirk's opinion. In addition, the agency should revise the index in the administrative record

9

to separate "Exhibit F" into parts which reflect the medical provider or agency physician who generated the particular record.[4]

> **B. Is there substantial evidence to support a conclusion that the claimant's determined "marked" limitations in concentration, persistence and pace are consistent with substantially gainful activity?**
>
> **1. Episodes of decompensation**

Plaintiff contends that he is entitled to an award of benefits pursuant to 20 C.F.R. § 404, Appendix I, Rule 12.04, because "[a]rguably the record supports a finding that this claimant has repeated episodes of decompensation." *Id.* at 9-10. Plaintiff, however, fails to develop any argument or legal authority in support of this "arguable" position that an individual who has bi-polar disorder who is fired from employment "because of inability to control his temper" meets the requirements of Listing 12.04. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). A court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments. *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995). Accordingly, the court deems this argument waived.

---

[4] Plaintiff's medical records appear in "Exhibit F," which is identified in the administrative record as "Section F" consisting of "627" pages (AR 1, 132-781). (Based on the page numbering, it appears that Exhibit F actually consists of 650 pages.) The agency has not provided an index to this lengthy exhibit, which contains records from a host of medical providers. The ALJ cites this single large exhibit as the basis for his decision (i.e.,"[t]he medical evidence of record contains many duplicate documents and unless there is a specifically cited page number, all fact [sic] set forth below reference Exhibit F in its entirety") (AR 15). The lack of an index to the medical records makes review of the administrative record unnecessarily time-consuming.

### 2. Hypothetical question posed to vocational expert

Plaintiff contends the hypothetical question posed to the vocational expert at step five of the sequential process was inaccurate. Plaintiff's Brief at 9-10. Specifically, plaintiff contends that the hypothetical question is flawed because: his "marked limitation in the ability to sustain concentration persistence or pace" is inconsistent with the hypothetical which "specifically asserts an ability to remain on task;" that the hypothetical "is directly inconsistent with the very finding that the claimant suffers severe limitations;" and that the hypothetical "fails to address the periodic nature of a Bi-Polar condition." Defendant's Brief at 10.

The court has determined that the ALJ committed errors in evaluating the medical evidence. The ALJ's hypothetical question, which sets forth limitations based upon that evaluation, would be subject to reversal and remand for the same errors. For this reason, a separate review of the hypothetical question would serve no purpose in this report. Accordingly, the court finds it unnecessary to address plaintiff's objections to the hypothetical question.

### IV. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).


Dated: January 8, 2010                         /s/ Hugh W. Brenneman, Jr.
                                               HUGH W. BRENNEMAN, JR.
                                               United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).